**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN COURTHOUSE**

| | |
|---|---|
| Gustavo Teran, individually and on behalf of all others similarly situated, | 1:22-cv-09486 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| CVS Pharmacy, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. CVS Pharmacy, Inc. ("Defendant") manufactures, markets, and sells toothpaste represented as for "Gum & Enamel Repair" and containing "[a] Clinically proven ingredient to help reverse gingivitis" under the CVS Health brand ("Product").



**I.    PERIODONTAL DISEASES**

2. Gum or periodontal diseases various stages to periodontal disease—from gingivitis (early stage) to periodontitis (advanced disease).

3. This is caused by plaque, a sticky film always forming on teeth.

4. Plaque contains bacteria that produce harmful toxins.

5. If plaque is not removed, the toxins can irritate, infect and inflame the gums and bone that surround and support the teeth.

6. This cause the gums (gingivae) to pull away from the teeth, forming pockets in which more bacteria can collect.

7. Plaque that is not removed hardens into tartar (calculus), along and under the gums.

8. As it progresses, tissue and bone supporting the teeth are destroyed.

9. The result is that teeth may fall out or need to be removed.

10. In the gingivitis stage, the gums can become swollen, red, and may bleed.

11. The pockets and hard calculus make it difficult to remove plaque without help from a dentist.

12. According to the American Dental Association ("ADA"), gingivitis may be reversed if caught early and no damage has been done to the supporting structures under the teeth.

13. As the ADA explains, the early-stage gingivitis reversal process entails the careful removal of plaque and tartar down to the bottom of each periodontal pocket.

14. The tooth's root surfaces are then smoothed to allow the gum tissue to heal and reattach to the tooth.

15. Even with these measures, some patients develop more severe periodontal disease that must be treated further and which may require multiple dental visits.

16. While the Product's ingredients and good oral hygiene can prevent gingivitis, this is not sufficient to repair gums or reverse gingivitis.

17. While gingivitis can be cured in its early stages by improving oral hygiene habits, reversing later-stage gingivitis requires periodontic (gum) deep cleaning by a dental professional.

18. By claiming the Product can "reverse gingivitis" without any qualifications or

limiting language, purchasers will expect it can do what otherwise would require dental treatment.

19. Receding gums do not grow back once gum tissue has pulled back from the teeth.

20. When gums recede, the roots of the teeth become exposed, making the teeth look longer, which changes the way the smile looks.

21. At every stage of periodontal disease, professional treatment is needed to repair gums.

22. Non-surgical options include gingival veneers, which are covers applied over the gum area.

23. Surgical options include cosmetic surgery, such as gum grafting.[1]

24. The representation of "Gum & Enamel Repair" is false, deceptive and misleading because the Product can only help "control, reduce or prevent gingivitis, an early form of gum disease."[2]

25. Though the Product's statement of identity is "Daily Fluoride Anticavity & Antigingivitis Toothpaste," the most prominent statement is "Gum & Enamel Repair."

26. Although "gum" does not directly precede "repair," its large typeface is similar to the word "enamel," and both words are modified by the word "repair," to which "gum" is tethered by proximity, and conjoined by the word "&" ("and").

27. Combined with the lack of any limiting language, reasonable consumers reading the Product label believe the Product will "repair" their gums and reverse gingivitis, when it will not.

---

[1] Periodontal Treatments and Procedures Perio.org; Shaddox, L. and Walker, C., Treating chronic periodontitis: current status, challenges, and future directions, Clin. Cosmet. Investig. Dent., v.2; Aug. 11, 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3645457/.
[2] Proposed Monograph, 21 C.F.R. Part 356 – Oral Health Care Drug Products For Over-The-Counter ("OTC") Human Use; 21 C.F.R. § 356.65 ("Labeling of antigingivitis/antiplaque drug products.").

28. Without the word "repair" applying to "gum," consumers reading the label would have no understanding of what "gum" by itself means.

29. Reasonable consumers will expect the Product will repair structural damage such as gum recession, bone loss, or periodontal pocketing, in addition to the promise of "revers[ing] gingivitis."

30. The Product's active ingredient – Stannous Fluoride .454% (.14% W/V Fluoride Ion) – which is common to most toothpastes, provides no unique gum "repair" benefits nor is authorized to claim it can reverse gingivitis.

31. Stannous fluoride only "helps interfere with harmful effects of plaque associated with gingivitis."

32. When the FDA issued the proposed monograph for labeling of antigingivitis/antiplaque drug products, it did not refer to or address any indications for gum repair or about "revers[ing]" gingivitis.

33. Instead, the proposed monograph states the indications of an antigingivitis product as helping to:

- "control" "reduce" or "prevent" gingivitis (for antigingivitis products);
- "interfere with harmful effects of plaque associated with gingivitis" (if the product contains stannous fluoride); or
- "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis (for antigingivitis/antiplaque products).

34. The FDA cautioned sellers of oral care products against representations not specifically discussed in the proposed Monograph, since such statements could – and in this instance, do – mislead consumers.

35. Since gums and enamel can be repaired, the 3 out of 4 American adults with gingivitis will expect the Product to be able to repair their gums.

36. Reasonable consumers cannot be expected to know that the Product will be unable to repair gums or to reverse gingivitis.

37. Repairing gums and reversing gingivitis are materially different from controlling, reducing, and preventing gingivitis or removing plaque that leads to gingivitis.

38. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

39. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.79 for 4.1 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

40. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

41. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

42. Plaintiff is a citizen of New York.

43. Defendant is a Rhode Island corporation with a principal place of business in Woonsocket, Providence County, Rhode Island.

44. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

45. The members of the class Plaintiff seeks to represent are more than 100, because the

Product has been sold with the representations described here, in thousands of CVS stores and online, in the States Plaintiff seeks to represent.

46. 85% of Americans live within 10 miles of a CVS.

47. CVS stores get close to 5 million customers a day, which means only 0.00002 percent of these people would need to purchase the Product per day to exceed the 100 person requirement.

48. Venue is in this District with assignment to the Manhattan Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Bronx County, including Plaintiff's purchase of the Product, his reliance on the identified statements, and his awareness these were false and misleading.

Parties

49. Plaintiff Gustavo Teran is a citizen of Bronx, New York, Bronx County.

50. Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with a principal place of business in Woonsocket, Providence County, Rhode Island.

51. Founded as Consumer Value Stores almost sixty years ago in Massachusetts, CVS has consistently been a place for consumers to fill their most important needs.

52. Originally selling a variety of goods, CVS became focused on meeting the healthcare needs of Americans and is a leading pharmacy and healthcare company.

53. From the almost ten thousand CVS stores in all 50 states, consumers have confidence CVS is looking out for their health.

54. Consumers consistently rank CVS as giving them the most value for their money, in addition to relying on the advice of their trained staff and pharmacists.

55. According to surveys, the CVS brand enjoys a high level of trust from the public, more than other national pharmacies.

56. CVS has been known for its values and unique approach to business and community, through its ethics, transparency to investors and customers, and philanthropy.

57. While CVS stores sell leading national brands, they also sell a large number of products under one of their private label brands, CVS Health.

58. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

59. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

60. Products under the CVS Health brand have an industry-wide reputation for quality and value.

61. In releasing products under the CVS Health brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

62. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

63. That CVS Health branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

64. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

65. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

66. Private label products under the CVS Health brand benefit by their association with consumers' appreciation for the CVS brand as a whole.

67. The development of private label items is a growth area for CVS, as they select only top suppliers to develop and produce CVS Health products.

68. The Product is available to consumers in this District from Defendant's retail stores and website.

69. Plaintiff purchased the Product at CVS locations which may include 1688 Westchester Ave Bronx, NY 10472, between 2021 and 2022, among other times.

70. Plaintiff read and relied on the words "Gum & Enamel Repair" and that it contained "[a] Clinically proven ingredient to help reverse gingivitis," and expected the Product could repair gums and reverse gingivitis.

71. Plaintiff bought the Product at or exceeding the above-referenced price.

72. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

73. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

74. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

## Class Allegations

75. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Montana, Texas, North Dakota, Wyoming, Idaho, Alaska, Iowa, West Virginia, Mississippi, Tennessee, Arkansas, South Carolina, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

76. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

77. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

78. Plaintiff is an adequate representative because his interests do not conflict with other members.

79. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

80. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

81. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Plaintiff saw and relied on the labeling which stated it could repair gums and reverse gingivitis.

84. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because a high percentage of American adults have dental problems, coupled with the lack of affordable dental care.

85. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

86. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

87. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

88. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

89. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it could repair gums and reverse gingivitis.

90. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

91. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as the many Americans who have dental problems such as gum rescission and are suffering from various stages of gingivitis.

92. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it could repair gums and reverse gingivitis.

93. Defendant's representations affirmed and promised that the Product could repair gums and reverse gingivitis.

94. Defendant described the Product so Plaintiff believed it could repair gums and reverse gingivitis, which became part of the basis of the bargain that it would conform to its affirmations and promises.

95. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

96. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its private label products that exceed national brands in quality.

97. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

98. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

99. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

100. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

101. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it could repair gums and reverse gingivitis.

102. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it could

repair gums and reverse gingivitis, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

### Fraud

103. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it could repair gums and reverse gingivitis.

104. Defendant knows it is not authorized to claim the Product can repair gums or reverse gingivitis, because it has a large compliance department which presumably checks the labeling on its private label products.

### Unjust Enrichment

105. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
4. Other and further relief as the Court deems just and proper.

Dated:   November 6, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.

60 Cuttermill Rd Ste 412<br>
Great Neck NY 11021<br>
(516) 268-7080<br>
spencer@spencersheehan.com